Filed 12/18/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ZURICH AMERICAN INSURANCE COMPANY,<br><br>      Petitioner,<br><br>      v.<br><br>WORKERS' COMPENSATION APPEALS BOARD,<br><br>      Respondent;<br><br>CALIFORNIA INSURANCE GUARANTEE ASSOCIATION,<br><br>      Real Party in Interest. | B321864<br><br>(W.C.A.B. No. ADJ487398) |

ORIGINAL PROCEEDING; petition for writ of mandate. Petition granted.

Law Offices of Tracey Lazarus and Patrick D. O'Keeffe for Petitioner.

Allison J. Fairchild for Respondent.

Guilford Sarvas & Carbonara and Justin P. Harrison for Real Party in Interest.

Labor Code section 5909 provides that if the Workers' Compensation Appeals Board (Board) does not act on a party's petition for reconsideration of a decision by the workers' compensation judge (or arbitrator) within 60 days, the petition is "deemed to have been denied."[1]  In this case, the Board granted a petition for reconsideration filed by real party in interest, California Insurance Guarantee Association (CIGA), more than nine months after CIGA filed its petition.  The Board sought to justify its late decision on the basis its delay was the result of an "administrative irregularity" in the workers' compensation appeals process that delayed transmission of CIGA's timely filed petition to the Board.  Zurich American Insurance Company seeks a writ of mandate directing the Board to rescind its order granting CIGA's petition, arguing the petition had already been denied by operation of law under section 5909.

In response, the Board relies on an exception to section 5909's 60-day deadline recognized over three decades ago by the Court of Appeal in *Shipley v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th 1104 (*Shipley*), which found the 60-day deadline was tolled because the claimant diligently inquired into the status of his petition for reconsideration and the Board misled the claimant to believe his petition would be considered once the lost file on his case was retrieved or reconstructed.

We conclude the language and purpose of section 5909 show a clear legislative intent to terminate the Board's

---

[1]	Further undesignated statutory references are to the Labor Code.

2

jurisdiction to consider a petition for reconsideration after the 60 days have passed, and thus, decisions on the petition made after that date are void as in excess of the agency's jurisdiction. After 60 days the administrative process is final, and a petitioner has 45 days under section 5950 in which to seek a writ of review of the decision of the workers' compensation judge or arbitrator by the Court of Appeal or Supreme Court. The Board's contrary interpretation—that it retains jurisdiction to consider a petition well after the 60-day deadline has run—would deprive the parties of finality and create uncertainty as to when the clock begins to run on a petitioner's right to seek judicial review.

Because section 5909 divests the Board of jurisdiction to consider a deemed-denied petition for reconsideration after 60 days has passed, we disagree with the conclusion in *Shipley, supra*, 7 Cal.App.4th at page 1108 that a petitioner has a due process right to review by the Board after the deadline. But even if *Shipley* can be read to apply equitable principles to allow the Board to consider a petition for reconsideration beyond the statutory deadline, the exception must be applied only (1) where a diligent petitioner's rights were violated due to the fault of the Board (such as a lost petition), and (2) the Board misled the petitioner in a manner that deprived the petitioner of a right to review by the Board or the appellate courts.

The Board asserts the workers' compensation appeals process system is inefficient, with petitions electronically filed or submitted to a district office being lost or, as here, the arbitrator failing to submit the arbitration record to the Board. We reject the Board's assertion it is powerless to address these failures. Nor is the remedy for the Board to ignore the Constitutional mandate in article XIV, section 4 that the Board "expeditiously"

3

determine matters under the Workers' Compensation Act (§ 3201 et seq.). Petitioners must be diligent—promptly inquiring of the Board as to the status of their petitions and, if the Board does not act within the 60-day time period, seeking review of the deemed-denied petition under section 5950 within 45 days. Had CIGA timely filed a petition for review, it could have obtained judicial review of the arbitrator's initial decision.

We issue a writ of mandate directing the Board to rescind its order granting CIGA's petition for reconsideration and ordering Zurich dismissed as a party defendant from the proceeding.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The Underlying Workers' Compensation Claim*

On September 27, 2000 Carlos Uribe suffered an industrial injury during his employment with XCEL Mechanical Systems, Inc., and he thereafter filed a workers' compensation claim. At the time of Uribe's injury, XCEL was insured for workers' compensation by Reliance Insurance. Reliance was subsequently declared insolvent and placed in liquidation. CIGA assumed administration of Uribe's claim.[2]

---

[2]    CIGA is an unincorporated association of insurers licensed in California, which pays claims of insolvent insurers pursuant to Insurance Code section 1063, et seq. (*Isaacson v. California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 786-787.) CIGA is required to "pay and discharge covered claims." (Ins. Code, § 1063.2, subd. (a).) Insurance Code section 1063.1, subdivision (c)(9)(A), excludes from the definition of a "covered claim" any claim that "is covered by any other insurance of a class covered by this article available to the claimant or insured."

4

B.     *CIGA's Claim Against Zurich*

Nearly 20 years after Uribe's injury, on August 3, 2020 CIGA, which had been paying benefits on Uribe's workers' compensation claim, petitioned to join Zurich in the workers' compensation proceeding based on a December 17, 2018 report prepared by the Workers' Compensation Insurance Rating Bureau showing that Zurich provided coverage for XCEL during the policy period from February 1, 2000 through February 1, 2001.  On September 1, 2020 the Board ordered Zurich joined as a party defendant.  On October 13 Zurich sent a letter to Uribe stating that it was handling Uribe's claim for XCEL, and it was denying liability for Uribe's injury for lack of medical evidence to support his injury and proof that he was working on a job site insured by Zurich.[3]

The parties arbitrated whether Zurich was liable for payments made on Uribe's claim.[4]  On August 23, 2021 the arbitrator denied CIGA's petition, finding CIGA's claim that Zurich provided coverage for XCEL with respect to Uribe's injury was not supported by substantial evidence.  Therefore, CIGA was required to continue to administer Uribe's claim and pay all lawful benefits, without reimbursement from Zurich.

C.     *CIGA's Petition for Reconsideration and the Board's*

---

[3]     Although Zurich denied liability, CIGA did not.  Therefore, this is a dispute between the insurance carriers, not over whether Uribe was entitled to coverage for his injuries.

[4]     Pursuant to section 5275, all coverage issues in workers' compensation cases must be resolved by arbitration.

*Delayed Response*

On August 31, 2021 CIGA filed a petition with the Board for reconsideration of the arbitrator's ruling. Zurich answered the petition on September 7, 2021. Under section 5909, the last day for the Board to act on CIGA's petition was November 1, 2021, the first business day following expiration of the 60-day period. (See Cal. Code Regs. tit. 8, § 10600, subd. (b) ["Unless otherwise provided by law, if the last day for exercising or performing any right or duty to act or respond falls on a weekend, or on a holiday for which the offices of the Workers' Compensation Appeals Board are closed, the act or response may be performed or exercised upon the next business day."].)

On December 7, 2021, Zurich filed with the Board a "notice of lodgment"[5] of the arbitrator's amended findings, attaching the arbitrator's decision and requesting the Board dismiss it from the proceeding because the arbitrator's decision had become final. Zurich noted the Board did not act on the petition before the 60-day deadline, and CIGA did not file a petition for review in the Court of Appeal pursuant to section 5950 within 45 days from the date the petition for reconsideration was denied by operation of law.[6]

---

[5]  We have omitted some of the boldface and capitalization of documents in the record.

[6]  Section 5950 provides, "Any person affected by an order, decision, or award of the appeals board may, within the time limit specified in this section, apply to the Supreme Court or to the court of appeal for the appellate district in which he resides, for a writ of review, for the purpose of inquiring into and determining the lawfulness of the original order, decision, or award or of the order, decision, or award following

On December 13, 2021 CIGA submitted a reply brief in which it argued the Board retained jurisdiction over CIGA's petition for reconsideration because the petition had not been forwarded to the Board's reconsideration unit until October 6, 2021, a month and a half after CIGA filed its petition. Thus, CIGA suggested, the Board "may not have been given enough time to properly respond to CIGA's contentions." Citing *Shipley, supra*, 7 Cal.App.4th 1104, CIGA claimed, "The Board's jurisdiction continues to the extent its failure to act on CIGA's petition for reconsideration within 60 days of its filing was due to the Board's mistake or inadvertence and not caused by petitioner."

The Board failed to act (again) until June 13, 2022. By this time, more than nine months had passed since CIGA had filed its petition for reconsideration. The Board issued an order granting the petition for reconsideration for the purpose of allowing an opportunity for further study of the factual and legal issues (a "grant-for-study" order). The order explained, "[B]ased upon our initial review of the record, we believe reconsideration must be granted to allow sufficient opportunity to further study the factual and legal issues in this case. We believe that this action is necessary to give us a complete understanding of the record and to enable us to issue a just and reasoned decision."

The Board's June 13 order attached a "notice pursuant to *Shipley v. Workers' Comp. Appeals Bd.* (1992) 7 Cal.App.4th

---

reconsideration. The application for a writ of review must be made within 45 days after a petition for reconsideration is denied, or, if a petition is granted or reconsideration is had on the appeal board's own motion, within 45 days after the filing of the order, decision, or award following reconsideration."

1104." The notice stated the Board "first received notice of the petition[] [for reconsideration] on or about April 13, 2022." Citing *Shipley*, the notice concluded the "[o]pinion and order granting petition for reconsideration filed simultaneously with this notice may be considered timely if issued within 60 days of the Appeals Board receiving notice of the petition[]."

D. *Zurich's Petition for Writ of Mandate*

In response to the Board's grant-for-study order, Zurich filed a petition for writ of mandate in this court requesting we issue an order directing the Board to rescind its June 13, 2022 order and dismissing Zurich as a defendant.

In the Board's letter response, it explained that due to an "administrative irregularity," the Board did not receive CIGA's petition until after the 60-day time period under section 5909 had passed. Further, the Board pointed out that petitions for reconsideration are filed in the district office or electronically through the electronic adjudication management system (EAMS), and that staff must manually notify the Board that reconsideration was being sought. As a result, delays in the transmission from the district office to the Board often occur because of "the nature of EAMS" or "normal human error." According to the Board, these irregularities arose in approximately 1 percent of petitions before the COVID-19 pandemic and 5 percent thereafter. The Board stated this irregularity was "not within the control of CIGA or Zurich." The Board observed the current "Workers' Compensation system is much larger [than before], with the number of claims filed increasing exponentially since the latter part of the 20th century, without a concomitant increase in resources to handle those

8

claims." Thus, an extension of the time in which to respond was necessary "to ensure due process to all parties." The opinion noted the arbitrator filed his report but did not submit to the district office an electronic copy of the complete arbitration file. As a result, the Board did not receive the arbitrator's record, including the exhibits filed by the parties, transcripts and summaries of the witnesses' testimony, party stipulations, or the arbitrator's evidentiary rulings and findings.

We issued an order to show cause requesting the Board address in its return (1) whether there were any communications between CIGA and the Board while the petition for reconsideration was pending and before the Board granted reconsideration, and (2) whether the *Shipley* exception to the time limitation in section 5909 should be limited to situations in which a party that has filed a petition for reconsideration with the Board relies to its detriment on communications from the Board about the status of the petition.

The Board filed a return stating CIGA was not required to and did not contact the Board while its petition for reconsideration was pending, and CIGA had a due process right to reconsideration by the Board regardless of CIGA's diligence. Zurich filed a reply asserting the Board lacked jurisdiction once the 60-day deadline had passed, and further, *Shipley* should not apply in light of CIGA's lack of diligence. CIGA submitted a letter stating simply that it "concurs with the analysis and reasoning provided" by the Board in its return. We now grant the petition.

## DISCUSSION

9

A.      *Writ Review Is Appropriate*

The Board contends writ relief is not appropriate because its decision to apply an exception to section 5909 constituted a discretionary application of the exception recognized in *Shipley*, and further, the petition was premature because Zurich could seek a writ once the Board issued its final order on CIGA's petition for reconsideration.  Neither contention has merit.

Section 5955 provides the Supreme Court and Courts of Appeal have jurisdiction to issue a writ of mandate "in all proper cases" to, among other things, "review, reverse, correct, or annul any order, rule, decision, or award" of the Board.  "'[P]roper cases'" include those in which "mandamus is available under Code of Civil Procedure section 1085." (*Greener v. Workers' Comp. Appeals Bd.* (1993) 6 Cal.4th 1028, 1046; accord, *Earley v. Workers' Comp. Appeals Bd.* (2023) 94 Cal.App.5th 1, 10 (*Earley*).)  A petitioner seeking a writ of mandate must show "'(1) a clear, present and usually ministerial duty on the part of the respondent . . . ; and (2) a clear, present and beneficial right in the petitioner to the performance of that duty . . . .'" (*Santa Clara County Counsel Attys. Assn. v. Woodside* (1994) 7 Cal.4th 525, 539-540; see *Earley*, at p. 10.)

Zurich's petition sought an order requiring the Board to withdraw its June 13, 2022 order and dismiss Zurich as a defendant on the basis CIGA's petition had already been deemed denied under section 5909.  Determination of whether the 60-day deadline under section 5909 is jurisdictional is the proper subject of writ relief because the question involves statutory interpretation, not administrative discretion.  (See *Earley, supra*, 94 Cal.App.5th at p. 10 [writ of mandate was proper to compel Board to comply with its duty under section 5908.5 to explain its

10

reasons for granting reconsideration and identify the evidence supporting its decision];[7] *Rea v. Workers' Comp. Appeals Bd.* (2005) 127 Cal.App.4th 625, 632-633, 643 [granting writ relief under section 5950 annulling Board's new procedures involving the Uninsured Employers Fund].)

Further, Zurich's petition is not premature because its challenge is not to the merits of the Board's decision, but rather, to the Board's consideration of CIGA's petition for reconsideration once the petition was deemed denied.  Zurich lacked an adequate remedy at law if it had to wait for the conclusion of a void procedure to seek relief in this court.

B.      *CIGA's Petition for Reconsideration Was Denied by Operation of Law 60 Days After It Was Filed*

      1.      *Principles of jurisdiction*

The Supreme Court in *Law Finance Group, LLC v. Key* (2023) 14 Cal.5th 932, at pages 949 to 950 (*Law Finance*) recently discussed the framework for determining whether a trial or reviewing court has "fundamental jurisdiction" to decide a dispute where a statutory deadline for action has passed.  The court observed, "'A lack of fundamental jurisdiction is ""an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties."'"" (*Id.* at p. 949, quoting *Kabran v. Sharp Memorial Hospital* (2017)

---

[7]      In *Earley, supra*, 94 Cal.App.5th at page 11, Division Eight of this district held the Board's grant-for-study procedure is invalid in light of section 5908.5's plain language requiring the Board to specify the reasons for its decision and the evidence relied upon.  Zurich does not in this proceeding raise the validity of the Board's use of its grant-for-study procedure.

11

2 Cal.5th 330, 339 (*Kabran*).) The court explained, "Because of those harsh consequences, we apply a 'presumption that statutes do not limit the courts' fundamental jurisdiction absent a clear indication of legislative intent to do so.' [Citations.] This approach reflects "'a preference for the resolution of litigation and the underlying conflicts on their merits by the judiciary.'" [Citations.] To be sure, mandatory procedural rules—like many statutes of limitations or other filing deadlines—serve important policy goals, and courts must enforce them when properly raised. (See *Kabran*, at pp. 341-342.) But we will not assume that the Legislature intended to imbue a time bar with jurisdictional consequences merely because the statute speaks in mandatory terms; as we have said, 'jurisdictional rules are mandatory, but mandatory rules are not necessarily jurisdictional.' (*Id*. at p. 342; see *id*. at pp. 340-342.) To establish that a particular filing deadline is jurisdictional, more is required. Much as the high court has said of Congress, our Legislature 'must do something special, beyond setting an exception-free deadline, to tag a statute of limitations as jurisdictional' in the fundamental sense." (*Law Finance*, at p. 950.)

The *Law Finance* court concluded the deadline in Code of Civil Procedure section 1288.2 for a party to file a request to vacate an arbitration award within 100 days of service of the final award in response to a petition to confirm an award did not affect the court's fundamental jurisdiction because "nothing in section 1288.2's instructions for the timing of responses requesting vacatur clearly indicates the Legislature's intent to remove a class of cases from the court's fundamental jurisdiction. Section 1288.2 speaks only to obligations of the litigants and makes no reference at all to the power of the courts—in other

12

words, the section reads as an ordinary statute of limitations." (*Law Finance, supra*, 14 Cal.5th at pp. 946-947, 950.)

By contrast, in *Kabran, supra*, 2 Cal.5th at page 342, the Supreme Court held Code of Civil Procedure sections 657, 659, and former section 660, which govern when and how a party may litigate a motion for new trial, affect a trial court's fundamental jurisdiction. The court explained, "Not only is a party's attempt to file a notice of intent [to move for a new trial] after the relevant deadline invalid, but the court has no power to issue a ruling on the basis of an untimely filed notice or on a ground not set forth in the statute." (*Kabran*, at p. 342.) Nor does a trial court have jurisdiction to grant a motion for new trial after expiration of the statutory time for deciding a motion for new trial. (*Id.* at p. 337; accord, *Siegal v. Superior Court of Los Angeles County* (1968) 68 Cal.2d 97, 101 ["[t]he time limits of section 660 are mandatory and jurisdictional"].)

The Supreme Court in *Kabran* explained that indicia of legislative intent to make a deadline jurisdictional, thereby overcoming the presumption deadlines generally are not, include where "'"a consequence or penalty is provided for failure to do the act within the time commanded."'" (*Kabran, supra*, 2 Cal.5th at p. 343.) Courts have also "looked to whether the consequences of holding a time limitation mandatory or jurisdictional 'would defeat or promote the purpose of the enactment.'" (*Ibid.*) The court held Code of Civil Procedure section 659 and former section 660 "include such clear markers of legislative intent that their respective deadlines are jurisdictional." (*Kabran, supra*, 2 Cal.5th at p. 344.) Code of Civil Procedure former section 660 expressly stated "'the power of the court to rule on a motion for a new trial shall expire 60 days from'" the filing of the notice of

13

intent or service of notice of entry of judgment, and further, "'[i]f such motion is not determined within said period of 60 days, . . . the effect shall be a denial of the motion without further order of the court.'"[8] (*Kabran*, at p. 344.) By contrast, Code of Civil Procedure section 659a, which provides that either party "shall serve" and file any brief, affidavits, and supporting documents within 10 days of filing the party's intent to move for a new trial, is not jurisdictional because there is no ""'consequence or penalty'"" in the section for noncompliance with the filing deadline, and "nothing that suggests a legislative intent to deprive courts of jurisdiction to consider affidavits filed outside of the specified time limits." (*Kabran*, at pp. 344-345.)

The language in Labor Code section 5909 is similar to Code of Civil Procedure former section 660 (and stands in contrast to Code of Civil Procedure section 659a) in including the deemed-denied language as a ""'consequence . . . for failure to do the act within the time commanded.'"" (*Kabran, supra*, 2 Cal.5th at p. 343.) However, unlike former section 660, Labor Code section 5909 does not contain language making explicit that "the power of the court to rule on a motion for a new trial shall expire" beyond a set deadline. Nonetheless, the Supreme Court has held that statutory provisions stating that petitions or other requests to an agency are deemed denied by a specified date limit an agency's jurisdiction, and decisions made after the deadlines are void as in excess of jurisdiction. For example, in *Bonnell v. Medical Board* (2003) 31 Cal.4th 1255, 1259 the Supreme Court

---

[8] Although *Kabran* considered the 60-day deadline in Code of Civil Procedure former section 660, effective January 1, 2019, the deadline was extended to 75 days. (Stats. 2018, ch. 317 (A.B. 2230), § 1, eff. Jan. 1, 2019.)

14

considered Government Code section 11521, subdivision (a), which authorizes a state agency to order reconsideration of its own administrative adjudication within 30 days, with up to a 10-day stay of the deadline if necessary for the agency to evaluate a petition for reconsideration.  Government Code section 11521, subdivision (a), provides further, similar to Labor Code section 5909, that "[i]f no action is taken on a petition within the time allowed for ordering reconsideration, the petition shall be deemed denied."  The Supreme Court held "section 11521(a) is unambiguous and allows a maximum 10-day stay for agency review of an already filed petition for reconsideration.  As a result, the Board's decision to order a reconsideration [after the expiration of the 10-day stay] *is void for lack of jurisdiction*." (*Bonnell*, at p. 1265, italics added.)  In reaching its conclusion, the court relied on its prior holding in *American Federation of Labor v. Unemployment Ins. Appeals Bd.* (1996) 13 Cal.4th 1017, 1042 that "[a]n administrative agency must act within the powers conferred upon it by law and may not act in excess of those powers.  [Citation.]  Actions exceeding those powers are void, and administrative mandate will lie to nullify the void acts."

Further, as the Supreme Court explained in *People v. Chavez* (2018) 4 Cal.5th 771, 780, footnote omitted, "Even when there's no question that a court's action is well within the scope of its fundamental jurisdiction, the court may still exceed constraints placed on it by statutes, the Constitution, or common law.  [Citation.]  When a trial court fails to act within the manner prescribed by such sources of law, it is said to have taken an ordinary act in excess of jurisdiction.  [Citation.]  Such 'ordinary' jurisdiction, unlike fundamental jurisdiction, can be conferred by the parties' decisions—such as a decision not to object to any

15

perceived deficiency—and so is subject to defenses like estoppel, waiver, and consent." The *Chavez* court considered whether the trial court had authority under Penal Code section 1385 to dismiss an action in furtherance of justice after a defendant had completed probation, concluding that "[d]espite having fundamental jurisdiction, the court acts in excess of its jurisdiction, as conferred by section 1385, if it dismisses an action under that section that is no longer pending." (*Chavez*, at p. 787.)

The Supreme Court's decision in *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 652 (*J.M.*), addressing the deadline in the Government Claims Act (Gov. Code, § 810 et seq.) for an injured party to file an application under Government Code section 911.4 for relief from the deadline for filing a claim against a public entity, is on point. Government Code section 911.6, subdivision (c), provides that "[i]f the board [of the public entity] fails or refuses to act on an application within the time prescribed by this section, the application shall be deemed to have been denied on the 45th day . . . ." (*Id.*, § 911.6, subd. (c).) The Supreme Court held that where the public entity failed to act on a minor claimant's claim within 45 days, "by operation of law, [the minor's] application was deemed denied on December 8, 2012" (the 45th day after the claim was presented). The court explained, "A minor is ordinarily entitled to relief upon a timely application under section 911.6(b)(2). We do not suggest it would be proper for an entity to routinely ignore late claim applications and resort to the 'deemed . . . denied' provision of section 911.6(c) as a default procedure. Such applications should normally be reviewed and acted upon. But an entity may 'fail[] or refuse[] to act' for a variety of reasons." (*J.M.*, at p. 653.) The court elaborated, "The

16

timeliness of the application may be questionable due to uncertainty over when the cause of action accrued. The applicant's status as a minor during the relevant period may be disputable. The entity may have been unable to complete its investigation within the allotted time. The entity might also simply fail to act on an application through inadvertence. In all circumstances, a late claim application is deemed denied after 45 days, even though section 911.6(b)(2) would entitle the minor to relief if the application had merit.[9] By placing this limitation on the entity's time to act, the Legislature ensured that applications would not languish." (*Id.* at p. 653; footnote omitted.)

Moreover, the government claims statutory scheme at issue in *J.M.*, like the workers' compensation procedure for Board review, provides a remedy if the public entity denies the application or fails to act, allowing the applicant six months to seek relief in the superior court from denial of the application to file a late claim. (Gov. Code, § 946.6, subd. (b).) The minor claimant in *J.M.* missed the six-month deadline for seeking relief in the superior court from the school district's deemed denial of his application to file a late claim. (*J.M., supra*, 2 Cal.5th at p. 651.) The Supreme Court rejected the claimant's argument he was entitled to yet another extension of time, explaining "the statutes provide no recourse for counsel's failure to petition the court within six months of the deemed denial of J.M.'s late claim application." (*J.M.*, at p. 656; see *Pineda v. Williams-Sonoma Stores, Inc.* (2011) 51 Cal.4th 524, 529, fn. 5 [Supreme Court's

---

[9]     If the applicant was a minor during the entire time for presentation of a claim, the public entity "shall" grant the application. (Gov. Code, § 911.6, subd. (b)(2).)

17

grant of review under California Rules of Court, rule 8.512(b)(2), which provides a party's petition for review of an appellate opinion is "deemed denied" if the Supreme Court does not rule on the petition within 60 days after the last petition for review is filed or within 90 days if the deadline is extended, "was within this court's jurisdiction" where a nunc pro tunc order correcting a clerical error extended the time for review so the grant of review was within the 90-day time period].)

2.    *The Board acted in excess of its jurisdiction in granting CIGA's petition for reconsideration after the petition was deemed denied under section 5909*

As discussed, section 5909 provides, "A petition for reconsideration is deemed to have been denied by the appeals board unless it is acted upon within 60 days from the date of filing." We review the interpretation of section 5909 de novo. (*Segal v. ASICS America Corp.* (2022) 12 Cal.5th 651, 658; *Smith v. Workers' Comp. Appeals Bd.* (2009) 46 Cal.4th 272, 277 ["We independently review the construction of workers' compensation statutes."].)

We agree with our colleagues in *Earley, supra,* 94 Cal.App.5th at page 12 that section 5909 does not require the Board to issue a final ruling on a petition for reconsideration within 60 days. Rather, section 5906 envisions that the Board may grant a petition for reconsideration and rule based on the evidence previously submitted in the case or elect to grant reconsideration and then "direct the taking of additional

18

evidence."[10] (*Earley*, at p. 13, italics omitted.) And section 5908.5 requires the Board to state what evidence it relies on and the reasons for its decision—both in granting or denying a petition for reconsideration, and in its final decision affirming, rescinding, altering, or amending the initial findings or order.[11] (See *Earley*, at p. 13.) But the plain language of section 5909 and its legislative history make clear what the Board cannot do—ignore the 60-day deadline and then rule on the petition for reconsideration—because after 60 days, the Board no longer has jurisdiction to consider the petition.

### a. *The statutory language*

Section 5909 specifies a consequence for failure of the Board to act within 60 days—the petition for reconsideration is deemed denied. As discussed, the Supreme Court has found similar deadlines are jurisdictional, whether for lack of fundamental jurisdiction (*Kabran, supra*, 2 Cal.5th at p. 344) or

---

[10] Section 5906 provides, "Upon the filing of a petition for reconsideration, or having granted reconsideration upon its own motion, the appeals board may, with or without further proceedings and with or without notice affirm, rescind, alter, or amend the order, decision, or award made and filed by the appeals board or the workers' compensation judge on the basis of the evidence previously submitted in the case, or may grant reconsideration and direct the taking of additional evidence."

[11] Section 5908.5 provides, "Any decision of the appeals board granting or denying a petition for reconsideration or affirming, rescinding, altering, or amending the original findings, order, decision, or award following reconsideration shall be made by the appeals board . . . and shall state the evidence relied upon and specify in detail the reasons for the decision."

19

where an agency acts in excess of its jurisdiction (*Bonnell v. Medical Board, supra*, 31 Cal.4th at pp. 1259-1260). By contrast, statutory deadlines the Supreme Court has found not to affect a court's or administrative agency's jurisdiction generally set time limits but not a consequence for the failure to act by the deadline. (See, e.g., *Kabran, supra*, 2 Cal.5th at p. 343 [10-day limit in Code of Civil Procedure section 659a has no consequence or penalty, and therefore does not implicate court's fundamental jurisdiction]; *California Correctional Peace Officers Assn. v. State Personnel Bd.* (1995) 10 Cal.4th 1133, 1137-1138, 1148 [Government Code section 18671.1's deadlines for the State Personnel Board to render a decision following a hearing or investigation of a state employee's appeal from a departmental disciplinary hearing are not jurisdictional because there is no "statutory penalty or consequence which clearly reflects legislative intent to deprive the Board of further jurisdiction over an employee appeal and thereby invalidate future actions whenever the Board fails to render a timely decision"].)

>b. *The legislative history*

The legislative history also supports a finding section 5909 limits the Board's jurisdiction. In 1911, in response to a "public clamor . . . for reform of the laws relating to recovery for injuries received at work," the Legislature enacted the Roseberry Act, establishing a voluntary system of workers' compensation that provided compensation for employees' injuries without regard to negligence, in lieu of other forms of liability. (*Mathews v. Workers' Comp. Appeals Bd.* (1972) 6 Cal.3d 719, 728-729; see Stats. 1911, ch. 399, §§ 1, 3, p. 796.)

Under the Roseberry Act, the industrial accident board heard and decided employee applications for compensation, made findings, and issued awards determining the rights of the parties. (Stats. 1911, ch. 399, §§ 15, 16, p. 803.) An aggrieved party could only obtain review of the board's findings and award by filing an application for review within 30 days of the date of the award, which would be considered by the superior court. (*Id.*, § 18, p. 804.) But there was no deadline for the superior court to confirm or set aside the board's findings and award. Once the superior court made a decision, however, an aggrieved party could appeal the judgment to the Supreme Court in the same time and manner as other appeals from the superior court. (*Id.*, § 20, p. 804.) Thus, while the Roseberry Act provided for a streamlined no-fault system, the board had no deadline for issuing its award, and the initial review of the award was by the superior court with no deadline for a decision.

Shortly after the Roseberry Act became effective, voters approved the addition of section 21 to article XX of the Constitution, authorizing establishment of a compulsory workers' compensation system that would make employers liable for paying compensation to their employees for injuries incurred during the course of their employment "'irrespective of the fault of either party.'" (*Mathews v. Workers' Comp. Appeals Bd.*, *supra*, 6 Cal.3d at p. 730, italics omitted; see Cal. Const., former art. XX, § 21.) Former article XX, section 21 of the Constitution, as amended in 1918 (now found in article XIV, section 4)[12] specified

---

[12] In 1976 Article XX, section 21 was repealed as part of a constitutional reorganization, and its provisions were adopted as

21

the goal of any workers' compensation system that "the administration of such legislation shall accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character."  In response to the constitutional amendment, the Legislature in 1913 enacted the first compulsory workers' compensation system, with provisions similar to those that govern workers' compensation proceedings today.  (*Mathews,* at p. 730; *Great Western Power Co. v. Industrial Accident Commission* (1925) 196 Cal. 593, 602; see Stats. 1913, ch. 176, pp. 279-320.)  The Boynton Act, officially known as the Workmen's Compensation, Insurance, and Safety Act, created an "industrial accident commission, providing for its organization, defining its powers and duties *and providing for a review of its orders, decisions and award.*"  (Stats. 1913, ch. 176, preamble, p. 279, italics partially omitted.)

In contrast to the Roseberry Act, the Boynton Act required the industrial accident commission (commission) to issue its findings and award within 30 days of the hearing.  (Stats. 1913, ch. 176, § 25, p. 292).  The commission could appoint referees to hear matters and report their findings and conclusions to the commission within 20 days.  (*Id.*, § 76, subds. (a), (b) & (e), pp. 312-313.)  However, a single commissioner's or a referee's finding, order, decision, or award could only be deemed a decision of the commission if approved and confirmed by a majority of the members of the commission.  (*Id.*, § 4, pp. 280-281.)

article XIV, section 4.  (*Pacific Legal Foundation v. Brown* (1981) 29 Cal.3d 168, 184, fn. 8.)

22

Significantly, the Boynton Act replaced the Roseberry Act's procedure for review by the superior court with a procedure for an aggrieved party to file a petition for a rehearing (now called a petition for reconsideration)[13] of the commission's decision within specified deadlines. Sections 81 and 82 allowed any person aggrieved by the commission's final decision to apply to the commission for a rehearing within 20 days of the final order or decision of the commission. (Stats. 1913, ch. 176, §§ 81, subd. (a), 82, subd. (a), pp. 315-317.) Section 81, subdivision (f), provided further that "[a]n application for a rehearing shall be deemed to have been denied by the commission unless it shall have been acted upon within thirty days from the date of filing; *provided, however*, that the commission may upon good cause being shown therefor, extend the time within which it may act upon such application for rehearing for not exceeding thirty days." (*Id.*, § 81, subd. (f), p. 317.) The act also created a procedure for judicial review of a denial of a petition for rehearing (or a decision following a grant of rehearing), allowing an aggrieved party to file a petition for a writ of review in the Court of Appeal or the Supreme Court within 30 days of the denial of the petition or the decision following a grant. (*Id.*, § 84, subd. (a), p. 318.)

A Report of the Industrial Accident Commission on the status of the Boynton Act through June 30, 1914 addressed "[o]ne [c]rucial [i]ssue" that was "fundamentally important to the successful operation" of the Boynton Act. The report rejected the position of the workers' compensation bar that attorneys should be able to present their cases in the same manner they could

---

[13] In 1951 the term "rehearing" was replaced with "reconsideration" as part of an amendment to former section 5909. (Stats. 1951, ch. 778, p. 2270, § 25.)

before a court, explaining, "It is better for the state and for the people of the state that what may be termed 'average justice' shall be speedily and inexpensively administered than exact justice shall be striven for at a cost that, in many cases, would consume the entire amount involved and leave the applicant indebted for costs and expenses besides.  [¶]  . . .  In short, it is the purpose of the Commission to afford an object lesson as to how to determine issues of minor consequence with reasonable certainty and without delay or burdensome expenditure."  (Cal. Industrial Accident Com., Rep. of the Industrial Accident Com. of the State of Cal. for the Year 1913 and from January 1 to June 30, 1914 (1914) pp. 8-9.)

In 1937 the Labor Code was enacted, including former section 5909, which incorporated the deadline in section 81, subdivision (f), of the Boynton Act in substantially the same form. (Stats. 1937, ch. 90, § 5909, p. 304; see Stats. 1913, ch. 176, § 81, subd. (f), pp. 316-317.)  Likewise, the provision in section 84, subdivision (a), of the Boynton Act for an aggrieved party to file a petition for a writ of review within 30 days of a denial or decision on a petition for rehearing, was codified in Labor Code former section 5950.  (Stats. 1937, ch. 90, § 5950, p. 304; see Stats. 1913, ch. 176, § 84, subd. (a), p. 318.)

In 1965, the administrative and judicial functions of the commission were separated, with authority over judicial functions placed in the newly created Workers' Compensation Appeals Board.  (Stats.1965, ch. 1513, §§ 5, 7, pp. 3556-3557.)[14]

---

[14]  The 1965 legislation created the Workmen's Compensation Appeals Board (Stats. 1965, ch. 1513, § 5, p. 3356.).  In 1981 the Board's name was changed to the "Workers' Compensation Appeals Board." (Stats. 1981, ch. 21, § 2, p.46.).

Then, in 1978 the 30-day deadline in section 5950 was extended to 45 days. (Stats.1978, ch. 661, § 1, p. 2123.) And in 1992 the Legislature modified section 5909 to include the current 60-day deadline after which a petition for rehearing is "deemed to have been denied." (Stats. 1992, ch. 1226, § 5909, p. 5766.)

c. *The language, structure, and history of the Workers' Compensation Act show the Legislature's intent that the Board no longer has jurisdiction to decide a petition for reconsideration after 60 days*

As the language of section 5909 and legislative history show, the Legislature, in enacting the workers' compensation system, has adhered to the Constitutional goal that the system "accomplish substantial justice in all cases expeditiously, inexpensively, and without incumbrance of any character." (Cal. Const., art. XIV, § 4.) As discussed, the Boynton Act, in contrast to the prior voluntary program under the Roseberry Act, required the commission to issue its findings and award within 30 days of the final hearing (§ 25, subd. (a) (now Labor Code § 5313)); provided for review by the commission by filing a petition for rehearing (§ 82, subd. (a) (now a petition for reconsideration under Labor Code § 5900)); provided the "deemed to have been denied" language for a failure of the commission to act on the petition (§ 81, subd (f)) (now in Labor Code § 5909)); and provided for the filing of a petition for judicial review by a specified deadline (§ 84, subd (a) (now in Labor Code § 5950)). Moreover, the Legislature streamlined the procedure to make the findings of a single commissioner or referee enforceable as a decision of

25

the commission (former § 115, now in § 5310).[15] Further, as the commission's 1914 report highlights, the workers' compensation system is designed to achieve "'average justice'" that is "speedily and inexpensively administered" instead of "exact justice" that could consume too much time and leave the claimant in debt. (Cal. Industrial Accident Com., Rep. of the Industrial Accident Com. of the State of Cal. for the Year 1913 and from January 1 to June 30, 1914 (1914) pp. 8-9.) The Legislature struck that balance in providing finality to the decision of the workers' compensation judge, setting time limits in which the Board may review a petition for reconsideration, and, upon expiration of those limits, providing the parties with access to judicial review.

The structure of the review process supports this reading of statute. Under the current statutory scheme, sections 5909 and 5950 work in tandem, providing certainty in section 5909 as to when the deadline for seeking judicial review under section 5950 commences. Absent an interpretation of section 5909 that construes the deemed-denied language to terminate the Board's jurisdiction after the passing of 60 days, an aggrieved party would not know when to file a petition for a writ of review—after the 60-day deadline under section 5909 or months or years later when the Board acts on the petition. Moreover, as the Supreme Court explained in *J.M., supra*, 2 Cal.5th at page 653 in the

---

[15] Whereas section 4 of the Boynton Act required the commission approve and confirm the commissioner's or referee's findings and conclusions for a decision to be enforceable, Labor Code section 5310 now provides that the Board may appoint workers' compensation administrative law judges, who have "the powers, jurisdiction, and authority granted by law, by the order of appointment, and by the rules of the appeals board."

26

context of Government Code section 911.6, subdivision (c), "[b]y placing this limitation on the entity's time to act, the Legislature ensured that applications would not languish." A similar construction here is most consistent with the Constitutional directive for the workers' compensation system to accomplish substantial justice expeditiously and inexpensively. (Cal. Const., art, XIV, § 4.)

The Supreme Court's decision in *Evans v. Workers' Comp. Appeals Bd.* (1968) 68 Cal.2d 753 is consistent with our reading of section 5909. In *Evans*, the court held that the Board, in vacating a trial referee's decision granting an employee's petition to reopen his workers' compensation claim, did not comply with section 5908.5 because the Board failed to state the reasons for its decision or the evidence it relied upon. (*Evans*, at pp. 754-755.) The Supreme Court annulled the Board's decision, requiring the Board to issue a new decision that complied with section 5908.5, observing the Board "retains jurisdiction, having granted reconsideration within the 30-day period set forth in [former section 5909]." (*Evans*, at p. 755.)

In *United States Pipe & Foundry Co. v. Industrial Acc. Com.* (1962) 201 Cal.App.2d 545, 546, the Court of Appeal similarly concluded the 60-day limit in former section 5900 for the commission to grant reconsideration on its own motion of an order, decision, or award made by a workers' compensation judge "permit[s] no other conclusion than that the time limitation is jurisdictional." (*United States Pipe*, at p. 549.) The court explained, "The statutory prescription of the period in which to apply for reconsideration and for the finality of the commission's orders in the absence of such request has led the courts to rule that the commission lacked the power to grant an untimely

27

petition for reconsideration." (*Id*. at p. 549; accord, *Argonaut Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 247 Cal.App.2d 669, 673-674 [where the Board fails to act on a petition within 30 days under section 5909, the petition is deemed "denied by operation of law," and "further action of the board affecting a previous award exceeds its powers"];[16] see *Rymer v. Hagler* (1989) 211 Cal.App.3d 1171, 1182 ["Upon the expiration of time for reconsideration [under section 5903], the decision of the [workers' compensation] judge was final and conclusive."].)

Accordingly, the Board acted in excess of its jurisdiction in granting CIGA's petition after the petition was deemed denied under section 5909.[17] As we discuss below, no exception applied to extend the Board's jurisdiction.

---

[16] As the Court of Appeal explained in *Argonaut, supra,* 247 Cal.App.2d at pages 675 to 676, the fact the Board lacks jurisdiction to consider a motion for reconsideration once it is deemed denied under section 5909 does not prevent the Board from considering a motion to reopen a workers' compensation case under section 5803, which upon a showing of good cause permits the Board to "rescind, alter, or amend any such order, decision, or award," subject to a five-year limitation in section 5804 for altering compensation awards.

[17] The parties do not address whether the failure of the Board to act on a petition for reconsideration within 60 days was not only in excess of the Board's jurisdiction but also affected the Board's fundamental jurisdiction to consider the petition. Where a deadline affects a court's fundamental jurisdiction, this "implicates 'the basic power of a court to act,'" and therefore, "courts must enforce jurisdictional limitations even if considerations of waiver, estoppel, consent, or forfeiture might otherwise excuse a party's failure to comply with them." (*Law*

28

3. *Any exception under* Shipley *to the deadline for the Board to act on a petition for reconsideration must be limited to where the petitioner acts diligently and the Board's misleading conduct deprives a petitioner of administrative or judicial review*

The Board contends it retained jurisdiction to consider Zurich's petition pursuant to an exception carved out by *Shipley, supra*, 7 Cal.App.4th at page 1108 where a party would otherwise "be deprived of a substantial right without notice." We disagree with the conclusion in *Shipley* that a petitioner has a due process right to review by the Board of a petition for reconsideration even after 60 days has passed, given section 5909's clear language that if the Board has not acted on a petition for reconsideration within 60 days, it is deemed denied (but affording judicial review under section 5950). Indeed, as the Supreme Court observed in *LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 635, the Board may "simply by pocket denial dispose of cases under section 5909," that is, the Board may resolve an appeal by not

---

*Finance, supra*, 14 Cal.5th at p. 950; see *Kabran, supra*, 2 Cal.5th at p. 342.) The Supreme Court in *Law Finance*, after holding the filing deadline under Code of Civil Procedure section 1288.2 did not affect the court's fundamental jurisdictional, applied the equitable tolling analysis set forth in *Saint Francis Memorial Hospital v. State Dept. of Public Health* (2020) 9 Cal.5th 710, 719-720, and concluded equitable tolling applied to the deadline. (*Law Finance*, at p. 956.) We do not resolve this issue because even if the Board retained fundamental jurisdiction but acted in excess of its jurisdiction by purporting to decide CIGA's petition after it was deemed denied under section 5909, as we discuss below, equitable principles do not support the Board's position.

29

acting on the petition within 60 days despite the lack of any substantive consideration.  But even if *Shipley* is read to allow some form of equitable tolling to extend the deadline in section 5909 (or section 5950) where a diligent petitioner is misled to believe the Board would review his or her petition and is therefore deprived of an administrative or judicial review, we reject the Board's position the deadline may be extended any time the Board fails to act due to deficiencies in the administrative process.[18]

In *Shipley*, an applicant for workers' compensation benefits (Marshall Shipley) on July 19, 1990 timely filed a petition for reconsideration of an unfavorable decision.  (*Shipley, supra*, 7 Cal.App.4th at p. 1106.)  In late August or September, Shipley inquired about the status of his petition and learned from the Board's chief clerk that the file "had been inadvertently sent to 'Archives.'"  (*Ibid.*)  After further inquiry and the passage of several more months, the chief clerk told Shipley the office policy was to request the file a second time before allowing a duplicate file to be prepared.  (*Ibid.*)  After several more months, the Board allowed Shipley to reconstruct a duplicate file, which the Board sent to its rehearing unit.  (*Id*. at p. 1107.)  On September 26, 1991, well over a year after Shipley had filed his petition, the

---

18      Although the Board argues *Shipley* allows "tolling" of the 60-day deadline, the *Shipley* court did not address equitable tolling or other equitable principles, although it focused on the unfairness to Shipley and concluded that denial of Shipley's petition after the Board lulled him into believing the Board would take action "makes no sense."  (*Shipley, supra*, 7 Cal.App.4th at p. 1108.)

Board issued an order stating the petition was deemed denied by operation of law under section 5909. (*Shipley*, at p. 1107.)

The Court of Appeal reversed the Board's order, reasoning with respect to the deadline set by section 5909, "While this language appears mandatory and jurisdictional, the time periods must be based on a presumption that a claimant's file will be available to the board; any other result deprives a claimant of due process and the right to a review by the board. We emphasize Shipley's file was lost or misplaced through no fault of his own and due to circumstances entirely beyond his control. Surely the Legislature did not write the statute in anticipation of a system so inefficient that such gaffes were statutorily provided for." (*Shipley, supra*, 7 Cal.App.4th at p. 1107.)

The *Shipley* court relied on *State Farm Fire & Casualty Co. v. Workers' Comp. Appeals Bd.* (1981) 119 Cal.App.3d 193, which considered an untimely petition for appellate review under section 5950. (See *Shipley, supra*, 7 Cal.App.4th at p. 1108.) The *State Farm* court held the Board's failure to provide notice of its order denying a petition for reconsideration excused the petitioner's late filing of a petition for review with the Court of Appeal under section 5950. (*State Farm*, at p. 197.) Although the *State Farm* court observed the 45-day time period under section 5950 for filing a petition for a writ of review in the Court of Appeal was jurisdictional, the court reasoned the Board's failure to provide notice of its ruling on the petition for reconsideration deprived the petitioner of his statutory right to judicial review, which would "offend elementary due process principles." (*State Farm*, at pp. 195-197.) The court concluded the statutory period in which review could be sought, therefore,

31

"must be deemed to commence with the receipt of notice." (*Id*. at p. 197.)

Even if an exception to the 60-day deadline in section 5909 may be carved out based on equitable principles, any exception must be limited to the circumstances, as in *Shipley*, where a petitioner acts diligently to protect his or her rights and the Board misleads the petitioner into believing the Board would consider the petition after the 60-day deadline had passed, thereby depriving the claimant of review by the Board (and potentially any judicial review).[19]

The Board concedes CIGA made no inquiries of the Board prior to the expiration of the 60-day period on the status of its petition. Although petitioners are not responsible for deficiencies in the workers' compensation appeals process, experienced workers' compensation insurers such as CIGA (and its attorneys) are well aware of the delays in the process and the likelihood that a petition may be denied by operation of law if the Board does not receive the petition or the arbitration record. Yet CIGA took no action for nine months following the filing of its petition to inquire as to the status of its petition.[20]

---

[19] We note that under our construction of section 5909, the 45-day clock for filing a petition for a writ of review will commence once the 60-day deadline passes (or when the Board grants or denies the petition, if earlier). Thus, a claimant risks losing the right to petition for review under section 5950 if the claimant waits for notice of the Board's action (or inaction) before filing a petition for a writ of review where the 60-day deadline has passed.

[20] The Board asserts that if petitioners had to contact the Board to inquire of the status of their cases, the "Board's already

And more importantly, CIGA had a remedy even after its petition for reconsideration was denied by operation of law on day 60: It could have filed a petition for a writ of review with the Court of Appeal or the Supreme Court under section 5950 challenging the arbitrator's decision, so long as CIGA filed its petition within 45 days of the Board's order denying its petition for reconsideration (that is, within 45 days of denial of its petition by operation of law). Had CIGA protected its rights by filing a timely petition for a writ of review, the appellate courts would have had jurisdiction to consider alleged errors in the arbitrators' decision.[21] CIGA failed to take advantage of this remedy,

over-burdened administrative staff and attorneys would be overrun by the resulting flood of telephone calls, letters, and e-mails." Although we recognize the administrative challenges facing the Board, the suggestion that petitioners should not protect their rights because this would burden the Board's administrative staff and attorneys is troubling. And, as Zurich points out, the Board could request additional funding from the Legislature to remedy the deficiencies in the appeals process and handle the Board's increasing caseload.

[21] The Board argues judicial review is not an adequate substitute for review by the Board, which has authority to take additional evidence and make credibility findings. (See § 5906 [upon filing of a petition for reconsideration, the Board "may grant reconsideration and direct the taking of additional evidence"]; *Lamb v. Workmen's Comp. Appeals Bd.* (1974) 11 Cal.3d 274, 280-281 [the Board may "make its own credibility determinations" and "resolve conflicts in the evidence," as long as its decision is supported by substantial evidence in light of the entire record].) Although the administrative review process is more comprehensive than judicial review, it was the Legislature that created the ability for an aggrieved party to file a petition for

33

rendering the arbitrator's decision dismissing Zurich final. Accordingly, it was CIGA's own inaction that denied it a remedy.[22]  Indeed, CIGA does not argue the Board's conduct deprived it of an opportunity to seek appellate review, nor does it seek leave in this proceeding to file an untimely petition for a writ of review.

By contrast, in *Shipley*, the Board's misleading conduct in lulling Shipley into believing it would act on his petition as soon as it found his case file or the file was reconstructed (in response to Shipley's repeated inquiries) affected Shipley's ability to protect his rights.  Shipley continued to believe the Board would act on his petition for reconsideration, well past the time when the petition was denied by operation of law and after the deadline

---

reconsideration (§ 5900) and specified that the petition is deemed denied if it is not acted upon within 60 days (§ 5909).  Thus, the Legislature was well aware that if the Board takes no action within 60 days, the remaining judicial review would be more limited.

[22]  Moreover, as the Court of Appeal in *Saint Francis Memorial Hospital v. State Department of Public Health* (2021) 59 Cal.App.5th 965, 969 explained on remand from the Supreme Court, Saint Francis's failure to file a timely request for reconsideration was not objectively reasonable "because it is not objectively reasonable for an attorney to miss a deadline to file a petition due to a failure to appreciate easily ascertainable legal principles.  Thus, although we sympathize with Saint Francis's counsel and recognize it is easy to make such mistakes, we must again affirm the trial court's judgment."  Here too, an aggrieved party, even a self-represented employee, has the ability to calculate when the 60-day period runs under section 5909, as well as the 45-day deadline for filing a petition for review under section 5950.

for filing a timely petition for a writ of review of that denial had passed.[23]

Finally, as Zurich points out, it too has a legitimate interest in the finality of the arbitrator's decision. As discussed, the California Constitution requires the workers' compensation system to accomplish substantial justice "expeditiously" and "inexpensively." (Cal. Const., art. XIV, § 4.) Section 5909 furthers that purpose by imposing a limit of 60 days on the Board's jurisdiction to grant a petition for reconsideration, thereby ensuring the expeditious adjudication of a claim without allowing the open-ended extension the Board champions here.

## DISPOSITION

We issue a peremptory writ of mandate directing the Workers' Compensation Appeals Board to rescind its June 13, 2022 order granting CIGA's petition for reconsideration and its August 8, 2022 opinion and decision after reconsideration. We further direct the Board to order the dismissal of Zurich as a defendant based on the denial of CIGA's petition for

---

[23] The Board argues the doctrine of impossibility tolled the 60-day deadline because the Board could not have acted on CIGA's petition during that period given its lack of awareness the petition had been filed, relying on language in *National Shooting Sports Foundation, Inc. v. State of California* (2018) 5 Cal.5th 428, 433 that "courts have excused compliance with a statute of limitations where timely compliance was impossible." As discussed, section 5909 is not a statute of limitations, and further, section 5909 did not require the Board to act within 60 days—it only specified the consequences if it did not.

reconsideration by operation of law under section 5909.  Zurich is to recover its costs in this proceeding.


FEUER, J.

We concur:


SEGAL, Acting P. J.


MARTINEZ, J.